**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| SHAUN E. DOWDY, | ) | CASE NO. 1:18-cv-01169 |
| | ) | |
| Petitioner, | ) | JUDGE JEFFREY J. HELMICK |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| LaSHANN EPPINGER, Warden, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |

Petitioner, Shaun E. Dowdy, (hereinafter "Petitioner" or "Dowdy"), challenges the

constitutionality of his conviction in the case of *State v. Dowdy*, Cuyahoga County Court of

Common Pleas Case No. CR-09-520345-B. Petitioner, *pro se*, filed his Petition for a Writ of

Habeas Corpus pursuant to 28 U.S.C. § 2254. (R. 1). Warden LaShann Eppinger ("Respondent")

filed his Answer/Return of Writ (R. 10), and Petitioner filed a Traverse. (R. 17). Respondent

filed a reply. (R. 23). This matter is before the undersigned Magistrate Judge pursuant to Local

Rule 72.2. For reasons set forth in detail below, it is recommended that the habeas petition be

DENIED.

## I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment

of a state court, factual determinations made by state courts are presumed correct. 28 U.S.C. §

2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012) ("State-court

factual findings are presumed correct unless rebutted by clear and convincing evidence.") The

Eighth District Court of Appeals ("state appellate court") summarized the facts underlying

Petitioner's conviction as follows:

> {¶ 2} After this court's reversal of appellant's convictions for aggravated murder
> and kidnapping in 2012, the case was remanded to the trial court. *State v. Dowdy*,
> 8th Dist. Cuyahoga No. 96642, 2012-Ohio-2382. Appellant again pled guilty to
> those charges and was sentenced to a prison term of 33 years to life. Appellant did
> not appeal from those convictions, but did appeal from the partial denial of a
> motion for good-time credit in 2014, which this court affirmed. *State v. Dowdy*,
> 8th Dist. Cuyahoga No. 101589, 2015-Ohio-318.
>
> {¶ 3} On June 29, 2016, appellant filed a pro se motion to withdraw his guilty
> pleas. He argued that the court failed to comply with Crim. R. 11 when the court
> completely failed to advise him that he would have to serve a mandatory prison
> term. In opposition, the state pointed out that there was an agreed sentence in this
> case, which meant that appellant subjectively and objectively understood that he
> would receive a prison sentence of 33 years to life. In his reply to the state's
> response, appellant explained for the first time that his argument about a
> "mandatory sentence" actually meant that the trial court did not inform him that
> his sentence was ineligible for reduction through good-time credit. The trial court
> denied the motion on January 6, 2017, in a lengthy and comprehensive opinion.

*State v. Dowdy*, 2017-Ohio-8320, ¶¶ 2-3, 2017 WL 4861587 (Ohio Ct. App., Oct. 26, 2017),

*appeal not allowed*, 2018-Ohio-1600, ¶¶ 2-3, 152 Ohio St.3d 1444, 96 N.E.3d 299 (Ohio 2018).

## II. Procedural History

The court adopts Respondent's recitation of the procedural history, quoted below, as it is

an accurate recitation as reflected by the exhibits filed in conjunction with the Answer/Return of

Writ:[1]

---

[1] Petitioner acknowledges it has not filed every pre-trial motion filed by Dowdy's attorneys, as
those motions did not raise issues germane to the sole ground for relief in the habeas petition. (R.
10, PageID# 43). Petitioner vaguely complains the procedural history recitation is incomplete,
but offers no examples of any omissions other than the transcript from the September 25, 2018
resentencing hearing (R. 17, PageID# 815-816), an omission that was later rectified. (R. 23-1,
Transcript Vol. 3, PageID# 860-887). Other issues raised by Petitioner concerning the procedural
history simply challenge the Respondent's characterization of a filing as collateral rather than
direct, and Petitioner's reference to the trial court's order of September 25, 2018 as a *nunc pro
tunc* entry. (R. 17, PageID# 815-816). The court does not adopt these characterizations, and the

2

## A.      Trial Court Proceedings

On January 30, 2009, a Cuyahoga County, Ohio grand jury indicted Dowdy on three first-degree felony O.R.C. 2905.01(A)(3) Kidnapping charges each with a one-year firearm specification, a three-year firearm specification, a prior conviction specification, and a repeat violent offender specification; five second-degree felony O.R.C. 2903.11(A)(2) Felonious Assault charges each with a one-year firearm specification, a three-year firearm specification, a prior conviction specification, and a repeat violent offender specification; one O.R.C. 2903.01(A) Aggravated Murder charge with a felony murder specification, a one-year firearm specification, a three-year firearm specification, a prior conviction specification, and a repeat violent offender specification; and one O.R.C. 2903.01(B) Aggravated Murder charge with a felony murder specification, a one-year firearm specification, a three-year firearm specification, a prior conviction specification, and a repeat violent offender specification. (**Exhibit 1**).

The offenses were prosecuted in Cuyahoga County Common Pleas Court Case No. CR-09-520345-B, State v. Shaun Dowdy and Dowdy had legal representation throughout the trial court proceedings. (**Exhibit 2**) Dowdy's trial attorneys filed numerous pre-trial motions and since most of the motions do not directly pertain to Dowdy's current §2254 habeas relief ground, the Warden has filed a certified copy of the trial court docket (**Exhibit 3**) and only the actual pre-trial records that directly pertain to Dowdy's current habeas relief claim.

At a September 9, 2009 motion hearing, Dowdy's attorneys advised the trial court that they had concerns regarding Dowdy's mental health and competence to stand trial, and they made an oral motion for an independent, confidential competence assessment, which the trial court granted. (**Exhibit 4**) At Dowdy's request, the trial court subsequently modified its prior order and ordered the Psychiatric Clinic "to refrain from any discussion of the facts of the case with the Defendant during the course of its evaluation." (**Exhibit 5**)

The common pleas court's psychiatric physician was unable to render an opinion as to Dowdy's competence to stand trial, so the trial court ordered Dowdy to Northcoast Behavioral Healthcare Systems (Northcoast) for a 20-day inpatient competency evaluation and ordered Northcoast to provide a report "opining either (1) that the Defendant is incompetent to stand trial and is therefore requesting that the Defendant's legal status be updated to incompetent to stand trial or (2) that the Defendant is competent to stand trial and can be transported back to the Cuyahoga

_____

dispute is immaterial to the court's ultimate recommendation as to the disposition of this matter. Finally, to the extent Petitioner's procedural history contains conclusions that are his own rather than the determination of a state court, (*e.g.*, such as whether a filing was timely or proper under Ohio rules), the court's inclusion of such statement should not be misconstrued as agreement or adoption of such assertions.

County jail to await trial." (**Exhibit 6**)

On February 17, 2010, with the benefit of legal counsel and pursuant to a negotiated plea agreement, Dowdy pled guilty to one Kidnapping charge and one Aggravated Murder charge with a 3-year firearm specification. (**Exhibit 7**) (**Tr. Vol. 1**) The trial court found Dowdy guilty and sentenced Dowdy to 10 years in prison for the Kidnapping conviction, a consecutive Life in prison with parole possibility after 20 years for the Aggravated Murder conviction, and a mandatory, prior and consecutive 3 years in prison for the firearm specification, resulting in an aggregate 33 years to Life in prison sentence. (**Exhibit 7**) (**Tr. Vol. 1**) At the State's request, the remaining charges were nolle prosequi. (**Exhibit 7**) (**Tr. Vol. 1**)

On December 27, 2010, Dowdy filed a pro se motion for re-sentencing and alleged that the trial court did not inform him of his right to appeal. (**Exhibit 8**) The State filed a response conceding that the trial court had not advised Dowdy of his appellate rights and a proposed journal entry to remedy the error in accord with state law. (**Exhibit 9**) On March 17, 2011, the trial court denied Dowdy's motion, but citing *State v. Gover*, 71 Ohio St.3d 577, 645 N.E. 2d 1246 (1995), the trial court re-entered Dowdy's original judgment entry of conviction to allow Dowdy to timely appeal. (**Exhibit 10**)

**B.     Direct Appeal**

On April 7, 2011, through different appellate counsel, Dowdy timely filed an appeal notice in the state appellate court. (**Exhibit 11**) Dowdy raised these error assignments on direct appeal:

1.   The trial court erred by consecutively sentencing the appellant for the crimes of kidnapping and aggravated murder, as they were allied offenses of similar import rendering the appellant's plea a violation of his due process rights.

2.   The trial court erred and rendered the appellant's plea void when it proceeded to disposition without holding a hearing on the issue of defendant's competency as was required by statute and the state and federal constitutions.

(**Exhibit 12**) The State filed a brief in response. (**Exhibit 13**) Dowdy then filed a *pro se* supplemental brief and raised these additional error assignments:

3.   The trial court made a error when accepting the appellant's guilty plea without making sure that the appellant understood the nature of the charges, in violation of the appellant's rights to due process of law under the 6th Amendment to the United States Constitution and Article

4

I, Section 10 of the Ohio Constitution, and fail[e]d to comply with Crim.R.11((C)(2)(a)). The plea was less then knowingly, intelligently made. (*sic*)

4. The plea must be vacated because the trial court made a error when it did not advise the appellant of his maximum penalty that would be imposed on the "firearm specification" on count 9, and fail[e]d to comply with Crim.R.11((C)(2)(a)). "the plea was less than knowingly, intelligently made." (*sic*)

(**Exhibit 14**) The State filed a brief in response (**Exhibit 15**) and Dowdy filed a pro se reply brief. (**Exhibit 16**)

The state appellate court then ordered the parties to brief the issue of whether the trial court had jurisdiction to reenter its judgment and whether the state appellate court has jurisdiction over the appeal. (**Exhibit 17**) Dowdy filed a supplemental brief (**Exhibit 18**) and so did the State. (**Exhibit 19**)

On May 31, 2012, under Case No. CA 96642, the state appellate court determined that the trial court did not have authority to reenter a sentence to restart the time to appeal and that Dowdy's appeal was untimely, however the state appellate court sua sponte granted Dowdy leave to file an untimely appeal. *State v. Dowdy*, 8th Dist. Cuyahoga No. 96642, 2012-Ohio-2382. (**Exhibit 20**) The state appellate court sustained Dowdy's second error assignment, reversed Dowdy's convictions, and remanded the case to the trial court to "vacate the plea and conduct a hearing on appellant's competency pursuant to R.C. 2945.37." (**Exhibit 20**)

**C.      Resentencing Remand**

Dowdy had new legal counsel for the subsequent trial court proceedings. On July 13, 2012, the trial court held a hearing, reviewed Dowdy's psychiatric report and determined that Dowdy was competent as of September 29, 2009. (**Exhibit 21**) On February 6, 2013, with the benefit of legal counsel and pursuant to a negotiated plea agreement, Dowdy again pled guilty to one Kidnapping charge and one Aggravated Murder charge with a 3-year firearm specification. (**Exhibit 22**) (**Tr. Vol. 2**) The trial court again found Dowdy guilty and sentenced Dowdy to an agreed sentence of 10 years in prison for the Kidnapping conviction, a consecutive Life in prison with parole possibility after 20 years for the Aggravated Murder conviction, and a mandatory, prior and consecutive 3 years in prison for the firearm specification, resulting in an aggregate 33 years to Life in prison sentence. (**Exhibit 22**) (**Tr. Vol. 2**) At the State's request, the trial court entered a nolle prosequi on the remaining charges. (**Exhibit 22**)

Dowdy did not timely appeal his February 6, 2013 judgment entry of conviction to the state appellate court and his filing deadline expired March 8, 2013. *See*

5

Ohio App.R. 4(A)(1); Ohio App.R. 14(A).

**D.      Post-Conviction Relief Proceedings (1)**

While Dowdy's direct appeal of his initial February 17, 2010 sentencing was pending, on November 10, 2011, Dowdy filed a post-conviction relief petition in the trial court, but after the state appellate court vacated Dowdy's original conviction, the trial court granted the State's motion to dismiss Dowdy's post-conviction relief motion as moot. (**Exhibit 23**)

On May 13, 2014, Dowdy filed a "motion to clarify or enforse (*sic*) order stating the defendant is eligible and subject to diminution of time off his sentence." (**Exhibit 24**) The state filed a brief in opposition (**Exhibit 25**), and Dowdy filed a reply. (**Exhibit 26**) On June 6, 2014, the trial court denied Dowdy's motion as to the Aggravated Murder conviction and firearm specification, and granted Dowdy's motion as to the Kidnapping conviction, and determined that Dowdy was entitled to Earned Credit Time on his Kidnapping sentence pursuant to O.R.C. 2967.193 and Ohio Admin. 5120-2-06. *State v. Dowdy*, 8th Dist. Cuyahoga No. 101589, 2015-Ohio-318. (**Exhibit 27**)

On June 25, 2014, Dowdy timely filed a *pro se* appeal notice in the state appellate court. (**Exhibit 28**) Dowdy raised this error assignment in his collateral appeal:

1.   Defendant conceives an issue with two Ohio Revised Codes conflicting with one another, (§2929.03(A)(1)(b) conflicting with §2967.193), as well as two Ohio Administrative Codes conflicting with one another that amplifies both Ohio Revised Codes, (5120-02-10(B) conflicting with 5120-0-05, 06, and 07). Requesting a certified conflict. In violation of both the Ohio and United States Constitutions.

(**Exhibit 29**) The state appellate court *sua sponte* dismissed Dowdy's appeal for failure to file the record (**Exhibit 30**), but Dowdy filed a motion for reconsideration (**Exhibit 31**), and the state appellate court reinstated Dowdy's appeal. (**Exhibit 32**) The State then filed a brief (**Exhibit 33**), and Dowdy filed a reply. (**Exhibit 34**) On January 29, 2015, under Case No. 101589, the state appellate court overruled Dowdy's error assignment and affirmed the trial court decision. *State v. Dowdy*, 8th Dist. Cuyahoga No. 101589, 2015-Ohio-318. (**Exhibit 35**)

On March 11, 2015, Dowdy timely filed a pro se appeal notice in the Ohio Supreme Court. (Exhibit 36) Dowdy raised these propositions of law in his jurisdictional memorandum:

1.   W[he]ther subsection 2903.01(A)(1(b) of aggravated murder sentencing statute is a mandatory sentence absent the word "full in that

section? (*sic*)

2. W[he]ther the provisions enacted in SB 2 under ORC §2967.193 and
OAC 5120-02-05 applies to the defendant, even know the crime was
committed in 2009, when SB 2 was effective, but was sentenced after
HB 86 became effective. Is he protected under the laws in effect at the
time of commission of the offense? (*sic*)

(**Exhibit 37**) The State did not file a response. On June 24, 2015, under Case No.
2015-0404, the Ohio Supreme Court declined to accept jurisdiction of Dowdy's
appeal pursuant to S.Ct.Prac.R. 7.08(B)(4). *State v. Dowdy,* 142 Ohio St.3d 1519,
2015-Ohio-2341, 33 N.E.3d 66 (Table). (**Exhibit 38**)

Dowdy did not file a petition for certiorari in the United States Supreme Court.

**E.      Prior §2254 Federal Habeas Corpus Case No. 1:15-CV-1848**

On August 26, 2014, under Case No. 1:15-cv-1848, Dowdy filed a prior pro se 28
U.S.C. §2254 habeas petition in this Court and raised this relief ground:

> **GROUND ONE**: The petitioner was explained at sentencing that he may
> subject to receive dimination of time off his sentence. After the petitioner's
> sentencing he was not reciving a dimination of time off his sentence, so he
> wrote the Ohio Public Defenders office seeking help. Over a few months of
> writ-ing the public defenders office I was advised that they were not going
> to help me in this matter and I must processed Pro Se. The petitioner did
> seek help from (B.o.s.c.) The Bureau of Sentence Computation, but the
> Bureau advised the defendant/Petitioner that he was not able to receive the
> dimination of time off his sentence. Therefore, The Petitioner filed a motion
> seeking: "Motion to clarify or enforse order stating the defendant is eligible
> and subject to diminuation of time off his sentence. (*sic*)

(**Exhibit 39**) The Respondent Warden filed an Answer / Return of Writ (**Exhibit
40**), Dowdy filed a notice of voluntary dismissal without prejudice (**Exhibit 41**),
and on April 28, 2016, this Court granted Dowdy's motion and dismissed
Dowdy's prior habeas case without prejudice. (**Exhibit 42**)

**F.      Delayed Direct Appeal**

On May 11, 2016, Dowdy filed an untimely pro se appeal notice (**Exhibit 43**) and
a motion for leave to appeal February 6, 2013 conviction and sentence (**Exhibit
44**) in the state appellate court. On May 19, 2016, under Case No. CA-16-104468,
the state appellate court denied Dowdy leave to appeal and dismissed his appeal.
(**Exhibit 45**) Dowdy did not timely appeal that decision to the Ohio Supreme
Court and his filing deadline expired on Tuesday, July 5, 2016. *See* Ohio

S.Ct.Prac. R. 7.01(A)(1); Ohio S.Ct.Prac. R. 3.03(A)(1).

**G.      Post-Conviction Relief Proceedings (2)**

**Motion to Withdraw Guilty Plea**

On June 29, 2016, Dowdy filed a pro se "motion to leave to withdraw guilty plea" in the trial court. (**Exhibit 46**) The State filed a brief in opposition (**Exhibit 47**), and Dowdy filed a reply. (**Exhibit 48**) On January 6, 2017, the trial court denied Dowdy's motion after determining:

> [U]nder the totality of the circumstances, the Court finds that the Defendant understood the implications of his pleas and the rights he was waiving before he entered his guilty pleas. Defendant's Motion and Defendant's Reply fail to establish non-compliance by the Court with the requirements of Criminal Rule 11 regarding its advisement of the maximum penalties for Aggravated Murder and associated three-year firearm specification in Count 9 of the indictment. For these reasons, Defendant's motion is denied.

(**Exhibit 49**)

On January 24, 2017, Dowdy timely filed a pro se appeal notice in the state appellate court. (**Exhibit 50**) Dowdy raised these error assignments on collateral appeal:

1.  The trial court erred as a matter of law in its holding that the failure to advise appellant of the mandatory prison term that was to be imposed was substantially compliant with the mandates of Crim.R. 11.

2.  The trial court erred and abused its discretion in failing to grant the motion to withdraw guilty plea upon appellant's showing of reversible error.

(**Exhibit 51**) The State filed a brief (**Exhibit 52**), Dowdy filed a reply brief (**Exhibit 53**), and on October 26, 2017, under Case No. CA-17-195396, the state appellate court overruled Dowdy's error assignments and affirmed the trial court decision. *State v. Dowdy*, 8th Dist. Cuyahoga No. 105396, 2017-Ohio-8320. (**Exhibit 54**)

On December 4, 2017, Dowdy timely filed a pro se appeal notice in the Ohio Supreme Court. (**Exhibit 55**) Dowdy raised these propositions of law in his jurisdictional memorandum:

1.  The failure of a trial [] court to mention at all a prison term to be imposed upon a guilty plea in a criminal case is to be a "mandatory

prison term", that is day for day with no opportunity to diminish the term, does not comply with the mandates of Crim.R. 11, and the resultant plea is not "knowing, voluntary and intelligent" so as to satisfy the requirements of due process of law.

2. The failure of a trial court to grant a motion to withdraw a plea of guilty upon a showing of manifest injustice created by the failure to advise the defendant of the mandatory nature of a sentence constitutes error and abuse of discretion, and violates the principles of procedural due process of law.

(**Exhibit 56**) The State did not file a response and on April 25, 2018, under Case No. 2017-1704, the Ohio Supreme Court declined to accept jurisdiction of Dowdy's appeal pursuant to S.Ct.Prac.R. 7.08(B)(4). *State v. Dowdy*, 152 Ohio St.3d 1444; 2018-Ohio-1600; 96 N.E.3d 299. (**Exhibit 57**)

Dowdy did not file a petition for certiorari in the Unites States Supreme Court and his filing deadline expired on July 24, 2018. See Sup. Ct. R. 13.

(R. 10, PageID# 42-52).

**H.     Motion to Properly Impose Post-Release Control**

On January 18, 2018, Dowdy, *pro se*, filed a "motion for court to impose properly stated [post-release control] term as statutorily mandated" with the trial court. (R. 10-1, Exh. 58, PageID# 652).

On August 9, 2018, the trial court granted the motion "in part" and ordered a hearing to correct its prior judgment "regarding the imposition of post release control under R.C. 2967.28." (R. 10, Exh. 59, PageID# 660). However, the trial court expressly "denie[d] Defendant's request for a de novo resentencing…." *Id*. Dowdy was appointed new counsel. (R. 10, Exh. 60, PageID# 661).

On August 24, 2018, Dowdy, *pro se*, filed a motion to correct a void sentence. (R. 10-1, Exh. 63, PageID# 666).

On September 25, 2018, according to its journal entry, the trial court held a hearing,

9

imposed a mandatory 5-year post release control term with respect to the kidnapping conviction, advised Dowdy of the potential consequences of violating post release control, and granted Dowdy leave to file a motion to withdraw his guilty plea. (R. 10-1. Exh. 61, PageID# 662). The trial court indicated it would enter a separate *nunc pro tunc* sentencing entry as a final appealable order. *Id*. The same day, trial court also filed a *nunc pro tunc* entry "as of and for 02/06/2013" and added the following language:

> Post release control is part of this prison sentence for 5 years mandatory for the above felony(s) under R.C. 2967.28. Defendant advised that if/when post release control supervision is imposed following his/her release from prison and if he/she violates that supervision or condition of post release control under RC 2967.28(d)(1), parole board may impose a prison term as part of the sentence of up to one-half of the state prison term originally imposed upon the offender.

> Defendant was advised of parole as to Count 9.

(R. 10-1, Exh. 62, PageID# 664).

On September 26, 2018, Dowdy, through counsel, filed "Defendant's Pre-Sentence Motion to Withdraw Guilty Pleas" with the trial court. (R. 10-1, Exh. 64, PageID# 675). The State filed its brief in opposition on December 10, 2018. (Cuyahoga County Online Docket, Case No. CR-09-520345-B). No ruling has been issued as of today's date. *Id*.

On December 17, 2018, the trial court granted the August 24, 2018 motion to correct a void sentence "in part," explaining that "[t]he motion is granted to the extent that it requests a hearing before the court to correct advisement regarding post release control under R.C. 2929.191, but is denied regarding defendant's request for a de novo resentencing. The issues raised by defendant in support of a de novo resentencing could have been raised in a direct appeal and are therefore barred by principals of res judicata." (Cuyahoga County Online Docket, Case No. CR-09-520345-B).

I.     **The Current Federal Habeas Petition**

On May 21, 2018, Petitioner, *pro se*, filed a Petition for Writ of Habeas Corpus asserting

the following sole ground for relief:

> **GROUND ONE**: Petitioner's right to due process of law was violated where the
> failure to advise him of the true consequences of his guilty plea render the plea
> invalid as not being knowingly, voluntarily and intelligently entered.
>
> *Supporting Facts*: Petitioner was never advised that the sentence being imposed
> upon him on the charge of Aggravated Murder and for the firearm specification
> were imposed to be "mandatory" time, not subject to any diminuation [sic] or
> reduction for earned credit and, in fact, was actively misled and advised that he
> could earn credit to reduce his sentence by the sentencing court.

(R. 1, PageID# 5).

### III. Statute of Limitations

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337, 117 S. Ct.

2059, 138 L. Ed. 2d 481 (1997); *Watkins v. Warden*, No. 17-1388, 2017 WL 4857576 at *1 (6th

Cir. Sept. 28, 2017) ("Actions arising under § 2254 have a one-year statute of limitations.") The

relevant provisions of AEDPA state:

> (d)(1) A one year period of limitations shall apply to the filing of an application
> for a writ of habeas corpus by a person in custody pursuant to the judgment of a
> State court. The limitation period shall run from the latest of—
>
> (A) the date on which the judgment became final by the conclusion of direct
> review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State
> action in violation of the Constitution or laws of the United States is removed,
> if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized
> by the Supreme Court and made retroactively applicable to cases on collateral
> review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1) & (2).

In the instant action, Respondent asserts that the petition is time-barred, because Petitioner did not file within the one-year limitations period. (R. 10, PageID# 54-66). Specifically, Respondent asserts that Petitioner's conviction became final on March 9, 2013—thirty days after his February 6, 2013 resentencing—when the time to file an appeal expired. (R. 10, PageID# 55). Respondent asserts that Petitioner is not entitled to statutory tolling or equitable tolling and that he has not made a credible showing of actual innocence to excuse his untimely petition. *Id.* at PageID# 60-66.

Petitioner asserts that his September 25, 2018 resentencing restarted the statute of limitations (R. 17, PageID# 817) based on two Sixth Circuit decisions. *See Crangle v. Kelly*, 838 F.3d 673, 678-679 (6th Cir. 2016) (rejecting State's emphasis on the *nunc pro tunc* label and finding that the resentencing, which imposed post-release control, "created a new sentence, it was a new judgment that reset the one-year statute of limitations to file a habeas corpus petition."); *In re Stansell*, 828 F.3d 412, 419 (6th Cir. 2016) ("we hold only that a partial resentencing that results in the imposition of post-release control is the type of change that creates a new judgment for purposes of the second or successive bar.") Respondent, however, contends that this case is similar to another decision in this district, *Camara v. Haviland*, No. 3:16 CV 756, 2017 WL 6459592, at *7 (N.D. Ohio Oct. 6, 2017) (Greenberg, M.J.), *report and recommendation adopted*, 2017 WL 6453321 (N.D. Ohio Dec. 15, 2017) (Pearson, J.). In

*Camara*, the court found that "*Crangle* does not apply" because the *nunc pro tunc* order merely corrected the record to accurately reflect the court's action, as terms of those sentences were clearly stated in his plea agreements and notices of post-release control, which Defendant signed. *Id.* at *7. The State asserts that, similarly, Dowdy's sentence after the *nunc pro tunc* resentencing was not "new" or "worse than before," and merely corrected the record to reflect the trial court's actions at the February 6, 2013 sentencing hearing. (R. 10, PageID# 56-57, R. 23, PageID# 855-856).

The court declines the State's invitation to resolve this petition on statute of limitation grounds, in light of the binding *Crangle* decision, and proceeds to resolve the petition on the merits and the specific facts in this case.

### IV. Procedural Default

Respondent has asserted that Petitioner's lone ground for relief is unexhausted and/or has not been fairly presented to the state courts and is, therefore, procedurally defaulted. (R. 10, PageID# 67-73). Nevertheless, the Court addresses ground one on the merits below to the extent it raises a cognizable claim. The United States Supreme Court has observed that federal courts are not required to address a procedural default issue before deciding against a petitioner on the merits. *Lambrix v. Singletary*, 520 U.S. 518, 525, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997).   The Sixth Circuit has also approved this rule where the procedural default question is complicated and unnecessary to the courts determination of the case. *See Bales v. Bell*, 788 F.3d 568, 573 (6th Cir. 2015) (observing that judicial economy may favor addressing the merits rather than seeking to resolve complicated issues of state law); *accord Pritchett v. Berghuis*, 2016 U.S. Dist. LEXIS 165947 at n. 2 (W.D. Mich. Nov. 5, 2016) (observing that both the Supreme Court and the Sixth Circuit have indicated that a district court has discretion to ignore a procedural default and

13

proceed directly to the merits of an apparently defaulted claim in order to promote expediency); *see also Hudson v. Jones*, 351 F.3d 212, 215-16 (6th Cir. 2003); *Swanigan v. Sherry*, 502 Fed. App'x 544, 546 (6th Cir. 2012).

## V. Review on the Merits

The court reviews this case pursuant to the AEDPA, 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings of the United States Supreme Court.  *See Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law." *Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002)).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413. By contrast, a state court's decision

involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id.* at 410-12. "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

### Ground One: Guilty Plea

In his sole ground for relief, Petitioner contends that his guilty plea was not knowingly, voluntarily, and intelligently entered because he was not advised of the true consequences of his guilty plea. (R. 1). Respondent asserts that the court must defer to the state appellate court's decision to reject this claim on collateral review, because the state appellate court's decision is neither contrary to nor an unreasonable application of clearly established Supreme Court precedent pertaining to guilty pleas and Due Process Clause rights. (R. 10, PageID# 76).

The Sixth Circuit has summarized the pertinent issues for a court to consider.

In order for a plea to be valid, it must be knowing, intelligent, voluntary, and made "with sufficient awareness of the relevant circumstances and likely consequences." *Bradshaw v. Stumpf*, 545 U.S. 175, 183, 125 S. Ct. 2398, 162 L. Ed. 2d 143 (2005) (quoting *Brady v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970)). "[A]gents of the State may not produce a plea by . . . mental coercion overbearing the will of the defendant." *Brady*, 397 U.S. at 750. Courts evaluate the voluntariness of a plea in light of all relevant circumstances surrounding it, and threats or misrepresentations that induce a plea also render that plea involuntary. *Id.* at 754-55. When the transcript shows that the

plea was voluntary and intelligent, a presumption of correctness attaches to the state-court findings of fact and to the judgment itself. *Garcia v. Johnson*, 991 F.2d 324, 326-27 (6th Cir. 1993). The record of a plea colloquy outweighs a petitioner's "alleged subjective impression." *Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999) (emphasis omitted).

*Jackson v. Smith*, Case No. 16-2156, 2017 U.S. App. LEXIS 21683, *6-7 (6th Cir. Oct. 27, 2017). It is the petitioner who "bears the burden of proving that his waiver was not, in fact, voluntary, knowing, and intelligent." *Otte v. Houk*, 654 F.3d 594, 600-601 (6th Cir. 2011); *accord Harvey v. Tambi*, 2014 U.S. Dist. LEXIS 184625, *67 (N.D. Ohio, May 6, 2014).

Specifically, Petitioner asserts that he was "never advised" that "his sentence was mandatory, and further misled that he could be eligible for earned credit for completing specific programs while in prison. (R. 1, PageID# 5, R. 17, PageID# 819).

A review of the applicable February 6, 2013, plea colloquy reveals that Petitioner was 25 years of age at the time, had completed a GED, and he denied being under the influence of alcohol, medication, or drugs. (R. 10-1, PageID# 762, Tr. Vol. 2 at 8). The following material exchanges occurred:[2]

> THE COURT: All right. Now, at least the Court is advised that you are agreeing to a sentence which would be 33 years to life in prison, and that is an agreement that was recommended to the Court. Of course, the Court is not bound to that agreement.
>
> But if you go forward and agree to a recommended sentence, then you would be waiving any right you might have to appeal that sentence, if the Court does follow the recommendation.
>
> Do you understand that without you're agreeing you would

---

[2] Petitioner does not assert that he was not informed of the rights he was foregoing (*i.e.* right to jury trial, right to counsel, right to confront witnesses, presumption of innocence, burden of proof, etc.), and, therefore, the court foregoes any recitation of this exchange. (R. 10-2, PageID# 762-764).

have the right to appeal the sentence itself?

Do you understand that?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Okay. Then now, other than what's been stated here today as part of the plea offer in this case, has anyone, including your attorney, the prosecutor, or anyone connected with the court made any promises or threats in order to coerce you into entering a change of plea in this matter?

THE DEFENDANT: No, sir.

* * *

THE COURT:  All right. Let me review with you the plea offer or the charges here that you are being asked to plead to and potential penalties, and then I will ask you how you're going to plead to those charges.

First, the State is asking you to plead guilty to the charge in count one, the charge of kidnapping under Ohio Revised Code Section 2905.0l(A)(3)….

That would leave it as a kidnapping charge, felony of the first degree, which even though the penalties have been changed under House Bill 86, be a maximum term of 11 years, you are still subject to the old sentencing term which is a potential prison sentence of 3 to 10 years.

So that is a prison sentence of 3, 4, 5, 6, 7, 8, 9 or 10 years in 1 year increments, and a fine not to exceed $20,000. And there is a presumption in favor of a prison sentence for felonies of the first degree. Also this is subject to 5 years of mandatory post release control.

What that means is, upon completion of any prison sentence associated with this charge you would be supervised by the Adult Parole Authority and they would have the right to place terms and conditions upon you for that 5 year period.

Now, if you were to violate any of those terms and conditions. during that 5 year period of time, then you

17

could be sent back to prison for up to one-half of the original sentence.

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Also. Well, those are all the penalties that can be imposed with respect to the charge in count one as amended; the charge of kidnapping, felony of the first degree.

Do you understand all the penalties you face with respect to that particular charge?

THE DEFENDANT: Yes, your Honor.

THE COURT: With that understanding, how do you plead to that charge?

THE DEFENDANT: Guilty.

THE COURT: Is that plea being given knowingly, voluntarily and of your own free will?

THE DEFENDANT: Yes, your Honor.

THE COURT: Let me move on to count nine. The State is also asking you to plead guilty to the charge in count nine which is the charge of aggravated murder….

That would leave the charge of aggravated murder under Ohio [R]evised Code section 2903.0l(A) along with the 3 year firearm specification under Ohio Revised Code Section 2941.145(A).

Now, as to the charge of aggravated … The potential ranges for the aggravated murder are a prison sentence of either 20 years to life, 25 years to life or 30 years to life, and that is a fine not to exceed $25,000.

There is, again, obviously no possibility for community control for aggravated murder and there is parole that is associated with the aggravated murder charge. What that means, that upon release, if you are released after the parole board would determine, subsequent to a hearing, that you may be released after serving that minimum term whether

it's 20, 25 or 30, and if the parole board decides to release you after you complete those terms, then you would be subject to terms and conditions set by the parole board.

And if you violate those terms and conditions, after a hearing you could be sent back to prison to complete the remainder of the life sentence or the life tail of that sentence.

Do you understand that?

THE DEFENDANT: Yes, your Honor.

MR. LUSKIN:[3] That is life without parole. It's 20, 25, 30 and life without parole.

THE COURT: …. Just to make it clear, those are the potential penalties, but your understanding is that the recommendation to the Court is that the Court impose the lowest of those sentences which is 20 years to life. Okay. That would then also be with the 3 year firearm specification in count nine.

That means that that 3 years would have to run prior to and consecutive with the underlying term of definite years. In other words, it would run prior to serving any of those 20 years that was recommended as part of that 20 to life sentence.

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: All right. Okay. I believe I have stated then all of the potential penalties that can be imposed with respect to the charge of aggravated murder in count nine as amended with the 3 year firearm specification.

Do you understand those penalties?

THE DEFENDANT: Yes, your Honor.

THE COURT: With that understanding then, how do you plead to that charge?

_____

[3] Mr. Luskin served as Petitioner's defense counsel.

| | |
|---|---|
| THE DEFENDANT: | Guilty, your Honor. |
| THE COURT: | Is that plea made knowingly, voluntarily and of your own free will? |
| THE DEFENDANT: | Yes, your Honor. |
| THE COURT: | All right. The Court is satisfied then that the defendant has made a knowing, intelligent and voluntary changes of plea. |

(R. 10-1, PageID# 764-772, Tr. Vol. 2 at pp. 10-18).

After completing the plea colloquy and accepting Petitioner's guilty plea, the court proceeded to the sentencing phase:

| | |
|---|---|
| THE COURT: | Now, that the defendant has pled guilty to the two charges here as outlined as part of the plea agreement with the State, does counsel wish to go directly into sentencing in this case? |
| | * * * |
| | Any objection to going forward with the sentencing at this time, Mr. Luskin or Mr. McGraw? |
| MR. LUSKIN: | No, your Honor. |
| MR. McGRAW: | No, your Honor. |
| THE COURT: | Then we'll proceed to sentencing. |

(R. 10-2, PageID# 773-774; Tr. Vol. 2 at pp. 19-20).

The court foregoes reiterating the terms of the sentence imposed, as that has been set forth adequately in the procedural history above. Instead, the court herein sets forth in its entirety the exact language the Court used during the sentencing phase, which Petitioner portrays as misleading:

| | |
|---|---|
| THE COURT: | I will advise you regarding earned credit. I don't think it applies to count 9 [aggravated murder]. It may apply to |

20

count 1. Earned credit is simply a credit off your sentence for completing specific programs within the institution. The fact this is an agreed sentence for that time period though. may negate any imposition of the earned credit, but just so you are aware, if you do complete a program within the institution you may be eligible up to one day of your prison sentence, one day per month, and if you do complete a second such program I believe it's five days credit under the new law for the second completed program, but again, whether or not you are eligible for that depends on the institution. But I will advise you there is such a thing as earned credit out there.

(R. 10-2, PageID# 788-789; Tr. Vol 2 at pp. 34-35).

As the court does not address Petitioner's argument *de novo*, the court notes that the state appellate court addressed Petitioner's claim as follows:

{¶ 7} Appellant attempts to distinguish a "mandatory minimum prison term"— something a court informs a defendant about during the plea colloquy as part of the penalties that are faced as a result of the plea—from a "mandatory prison term." He asserts that a mandatory minimum prison term is "defined as the least that a trial court can impose under the relevant statutes," and a "mandatory prison term" as the prison term where there is an "inability to diminish the sentence statutorily or through earned credit." However, there is no such definition recognized in the context of Crim.R. 11.

{¶ 8} Appellant claims that *State v. Tutt*, 2015-Ohio-5145, 54 N.E.3d 619 (8th Dist.), is directly on point. It does not aid appellant. *Tutt* says that before accepting a guilty or no contest plea, where a charge includes a sentence that is not eligible for community control or probation, a trial court must satisfy itself that a criminal defendant understands that fact. *Id*. at ¶ 19. The *Tutt* court goes on to define the general methods through which that can be accomplished:

by expressly informing the defendant that he or she is subject to a mandatory prison sentence and is therefore ineligible for probation or community control sanctions or by confirming the defendant's subjective understanding of that fact in some other way, i.e., if the "totality of the circumstances" warrants the trial court in making a determination that the defendant otherwise understands, prior to entering his plea, that he or she is subject to a mandatory prison sentence.

*Id*. at ¶ 20. That is, where a prison term is required, the court should satisfy itself that the defendant understands that a prison term is required. It does not mean, as

21

appellant asserts, that a criminal defendant must be told that his sentence for aggravated murder is not subject to good-time credit. For that assertion, he cites no authority.

{¶ 9} Here, the trial court satisfied this requirement both objectively and subjectively. The trial court explained that appellant faced a mandatory prison sentence. Appellant also agreed to a 33 year to life prison sentence as part of the plea agreement. Further, the trial court informed appellant that he would receive a 33-year-to-life prison sentence. This constitutes evidence that appellant was expressly told, and subjectively understood, that he was not eligible for community control. *See Tutt* at ¶ 20.

{¶ 10} The Sixth District has addressed a more analogous case to appellant's argument. *State v. Fisher*, 6th Dist. Lucas No. L-15-1262, 2016-Ohio-4750. There, a criminal defendant was misinformed that all his sentences were eligible for reductions through good-time credit when only some were. Id. at ¶ 15–16.

{¶ 11} Where a trial court provides information to a defendant during a Crim.R. 11 colloquy, that information should be accurate. *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 41. The *Fisher* court set forth:

> To ensure that pleas of guilty and no contest are voluntarily, knowingly, and intelligently made, trial courts must accurately advise defendants of the law in Crim.R. 11 plea colloquies. Fundamental fairness requires courts to hold themselves to exceedingly high standards when explaining the law to defendants who have waived constitutional rights.

*Fisher* at ¶ 20, citing *Clark*. However, the court went on to find a lack of prejudice and affirmed the denial of the motion to withdraw guilty pleas. *Id*. at ¶ 22–25.

{¶ 12} To be clear, in order to substantially comply with Crim.R. 11, a trial court is not required to inform a criminal defendant that his sentence may or may not be reduced by provisions for good-time credit. *Fisher* at ¶ 18. Appellant's own definition of "mandatory prison sentence" bears no relationship to the actual definition of that term as interpreted by the courts of Ohio.

{¶ 13} Appellant asserts that the trial court completely failed to inform him of the mandatory nature of the sentence, i.e., the court did not inform him of the inapplicability of good-time credit. His own argument distinguishes Clark from his situation. ***The transcript here indicates that the trial court did not mention such credit during the plea colloquy. Therefore, the court did not relay inaccurate information concerning good-time credit***.

{¶ 14} ***During sentencing, the court did makes some statements about good-***

22

> *time credit, but those statements do not affect the knowing, voluntary, and*
> *intelligent nature of his pleas that occurred at the change of plea hearing*.
> Appellant's sole assignment of error is overruled.

*Dowdy*, 2017-Ohio-8320 at ¶¶ 7-14 (emphasis added).

The court finds the state appellate court's decision thoroughly reasonable and not in contravention to any clearly established federal law. First, Petitioner's suggestion that he was influenced to accept a guilty plea based on misstatements as to the availability of earned credit or good-time credit lacks merit. As astutely recognized by the state appellate court, the trial court did not mention earned credit during the plea colloquy, but only during the sentencing phase. In other words, Petitioner entered his plea *before* the disputed statements regarding earned credit were made. Therefore, Petitioner cannot reasonably claim to have based his guilty plea, already entered, on any misinformation.

Moreover, a fair reading of the trial court's statements concerning good time credit reveals that the statements were merely made to inform Petitioner that such credits *might* be available. The trial court expressly stated that it did not think such credits were available for aggravated murder, and only stated that such credit "*may* apply to count 1." (R. 10-2, PageID# 788-789) (emphasis added). It further cautioned that the agreed upon nature of the sentence "may negate any imposition of the earned credit," *Id*. Even Petitioner's traverse acknowledges the indisputable fact that the so-called misleading statement as to the availability of earned credit or "good-time" credit occurred "during the sentencing proceedings" (R. 17, PageID# 817) and *not* during the plea colloquy. The trial court also plainly and unambiguously explained to Petitioner that his aggravated murder charge carried a mandatory term by explaining that "you may be released after serving that minimum term whether it's 20, 25 or 30 [years]…." (R. 19-2, PageID# 770).

23

Petitioner has failed to meet his burden of showing that his plea was not knowingly, voluntarily, and intelligently entered, as he was sufficiently advised of the consequences of his guilty plea. Therefore, his sole ground for relief is not well taken.

## IV. Conclusion

It is recommended, for the foregoing reasons, that Petitioner's Petition for a Writ of Habeas Corpus be DENIED.

/s/ David A. Ruiz
U.S. MAGISTRATE JUDGE

Date: August 2, 2019

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the district court's order.** *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981);** *Thomas v. Arn*, **474 U.S. 140 (1985),** *reh'g denied*, **474 U.S. 1111 (1986).**